Case number 20-4219, Jacee Wamer v. University of Toledo. Oral argument not to exceed 15 minutes per side. Peter Patakos for the appellant, you may proceed. Thank you. Good morning. Good morning. May it please the court. My name is Peter Patakos and I represent the appellant, Jacee Wamer. I would like to reserve five minutes for rebuttal, please. Alright. Ms. Wamer has asserted a Title IX claim against the University of Toledo on the basis that the university displayed deliberate indifference to her complaint that a university professor had sexually harassed her. This appeal asserts that the district court erred in granting the university's 12B6 motion on the basis that plaintiff failed to allege that the university's response to her complaint was clearly unreasonable so as to sustain a claim of deliberate indifference under Title IX. I wish to respectfully submit to this court that given the posture of the case below when it was dismissed and given the specific nature of the error alleged, that the issue before this court is relatively simple and mostly confined to analysis of a single paragraph of the district court's opinion. That is the last paragraph on page 7 where the court states as follows, Nothing in the plaintiff's complaint plausibly alleges that UT's action subjected plaintiff to a risk of further sexual harassment or made her more vulnerable to or unprotected from it. Plaintiff's subjective dissatisfaction with the investigation's outcome does not plausibly support an inference that UT's response to engage in a three-week investigation unaided by plaintiff left her exposed to a risk of further sexual harassment or caused her to be more vulnerable to such sexual harassment. Our position on this appeal is that the district court only reached this holding both by misconstruing plaintiff's allegations and inverting the 12B6 standard by construing the allegations and reasonable inferences that could be drawn from those allegations in the defendant's favor when it was required to do the opposite. Is the question whether a plaintiff in this situation has to allege another incident of discrimination? I don't believe that is the question in a case involving teacher-on-student harassment. I know that the state... I'm sorry, I'm sorry. I'm asking whether the question is whether someone in your client's position needs to allege that. I suppose that is a question that is before the court, and we have submitted in our briefing that in a case of teacher-on-student harassment that there need not be another incident of sexual harassment, that the plaintiff need only allege that the university's unreasonable, clearly unreasonable response left her vulnerable to further harassment and risked further harassment to her. And before I get to these specific allegations and the reasonable inferences that could be drawn from them, I would like to begin by discussing this court's well-established precedent on the requirements for proving a Title IX deliberate indifference claim, particularly in the teacher-on-student harassment context as opposed to student-on-student, which is a more difficult standard to make. Before you get into that, now, I understand your client, in response to the harassment, changed her major, refused to go to classes, and took only online courses. If the university is liable based upon a single incident of harassment, did she do these things in response to the harassment after providing notice that she had allegedly incurred the harassment? In other words, were these changes made by her in a way that would constitute damages? I guess what I'm asking is, if she didn't have to show severe and pervasive behavior, if she didn't incur severe and pervasive harassment after providing notice to the university, what does she suffer as a result of a single incident of teacher-student harassment? I guess in part what I'm looking to know is whether these changes she made occurred, changing her major and all that, after she notified the university of the harassment or not. So just in terms of the timeline, I'm asking compound questions and probably presenting too much to you in a single inquiry, but you can deal with that as best you can. I'll do my best, Your Honor. Thank you. In our complaint, we allege that as a result of the university informing Ms. Waymer that it would not be taking action on her complaint, she then was left vulnerable to further harassment. And it is that vulnerability, we will prove that vulnerability by proving that she did stay away from campus, she changed her major, she enrolled in mostly online courses, and that proof of those allegations will show, will prove the necessary element of proving that she was more vulnerable to increased risk. She didn't inform the university that she was doing any of those things in response to the harassment or in response to the non-action. We don't have allegations in our complaint one way or the other. I honestly don't know what her testimony will be about that, but the essence of our allegations are that the university unreasonably communicated with her, failed to communicate reasonably with her about its own investigation. In terms of what they did, I found in the record the Title IX report that happened later on after Drummond made the complaint. Is there a Title IX report from before? For example, the Title IX report we have says, we sent her an email with all this information and she came in for an interview. Is there anything in the first report that says we sent her the same email and she wouldn't come in? We don't believe there is, Your Honor. We don't believe there is. By that you mean you don't believe it exists or you don't believe it's in the record? It's certainly not in the record and we don't believe it exists. The essence of these allegations... So your sort of view on this, and we'll see what they say, is when Drummond made the complaint, they gin this up and there's all kinds of very formalistic stuff, which begins with simply an email to her. That's page three of the report, and you think none of that happened with respect to the initial complaint? None of that happened with respect to the initial complaint, and I think it's notable that six months later after Drummond heard what happened... So the part about would you be comfortable for coming in, is it clear that was a phone call as opposed to this kind of formal email? That was a phone call, Your Honor. Yes. Yes. And she was asked whether she would be comfortable coming in, and she answered honestly no, that she would not be comfortable. I do want to say in response to your questions that I think it's important to note that once Ms. Drummond, Professor Drummond, resubmitted the complaint six months later after Waymer had changed her major, stayed off campus, et cetera, the university shortly did terminate this professor based on a finding that, quote, he used his position of power and authority to initiate unwelcome physical contact with the plaintiff and behaved in a sexual manner towards her while she was enrolled in his class, which I think further supports a finding that she was in fact left with increased vulnerability during those six months when the university had failed to act. That vulnerability, in one sense, was from her perception. That is, suppose the university had, everything else had been just the same, but the professor just left at the end of the year. Or suppose that the university just quietly said, knock it off, prof, and he did, but she wouldn't have known necessarily about that. I guess where I'm taking that is, is there a difference between her deciding to take action that the university doesn't know about as opposed to simply the satisfaction of seeing him punished? Would the university be liable if everything was the same, nothing happened to her, but they punished him? I think that that comes down to an issue of fact regarding how the university officially communicated with the plaintiff. Once a student makes a complaint that's this serious, our position is that the university has a duty to reasonably communicate with the plaintiff, and those communications with the plaintiff help establish whether she was in fact vulnerable or not. So these hypotheticals that you're raising raise interesting factual issues that we would like to develop upon further discovery. I see that my time is running out. Can I go two minutes into my rebuttal time and reserve three minutes for rebuttal instead of five? Yes, you can do that. Thank you. I just want to summarize what these allegations specifically set forth, which we break down at page 19 of our opening brief. That's the top page number, the official page number. And this is also at paragraphs 38 through 46 of the complaint. The essence is that the university failed to communicate reasonably with the plaintiff about her complaint and essentially misled her into believing that her participation in the investigation was not. Is the standard clearly unreasonable process the same as unreasonable communication? I didn't see the use of clearly unreasonable with respect to communication in the cases as opposed to they were clearly unreasonable in everything they did taken together. I think the communication is inseparable from the process. The process is communication. This is communication of a complaint, communication of information throughout the investigation, and then communication to the complainant of the result. And we believe that with these allegations. That is part of the process. Yes. Yes, inseparable. So I won't walk through the allegations again, but it is our position that these allegations would not only support a finding that the university's response to the complaint was clearly unreasonable in light of known circumstances. They would also support a finding that the university intentionally misled Wehmer. You cited 38 to 46. 41 says without citation, UT informed Wehmer that they would continue pursuing the case even if Wehmer did not come in for an in-person interview. Is that just an allegation to be taken as true? Is there any support for it in the record? That is an allegation to be taken as true, Your Honor. That is what happened in the phone call. So I will wrap up. I see my time is up. Do you want to say a bit, and it doesn't have to be lengthy, of course, about the state of the case law distinguishing teacher-student harassment from peer harassment in the university context? Your Honor, I will speak briefly on that. Just to say that the state, in its response brief, has essentially ignored the essence of our argument on appeal and instead has focused on a misrepresentation of this distinction in suggesting that cases involving student-on-student harassment should apply here. The Supreme Court has made clear, and this Court has made clear, that teacher-on-student cases involve a different analytical framework and that the Kalerich decision of this Court that the state relies so heavily on has been explained again by this Court in the Doe v. University of Kentucky case that the Kalerich decision merely considered and re-articulated the pleading standard for student-on-student claims. So there was no alteration of the pleading framework established in the Gebzer case, which involves, again, teacher-on-student harassment. All right. Thank you. Thank you. Good morning. Good morning, Your Honors. You may proceed. Good morning, Your Honors. Christine Hayes with the Ohio Attorney General's Office here on behalf of the University of Toledo today. May it please the Court. We are here today because Judge Carr of the Northern District determined that the plaintiff had not met the pleading standard for a Title IX deliberate indifference case. That standard is time-worn. That is, that the University had to act clearly unreasonably in its response to the totality of the circumstances known at the time. In this case, the student, Ms. Wehmer, alleges that she was sexually harassed with unwanted touching and unwanted sexually-oriented comments in the office of a faculty member. There were no witnesses to that incident. Ms. Wehmer reached out to another faculty member to report this incident. That faculty member was a mandatory reporter under the University's policy. The policy is set forth as Exhibit 2 attached to plaintiff's complaint. I'm going to interrupt you just to try to get to the heart of this. Sure. Are you contending that the problem with the pleading is that she failed to allege that there was another incident? I will say that that is one of the problems with the pleading. But standing alone, I think the judge's determination to dismiss this case is solid based on the totality of the circumstances and a failure to plead that they were clearly unreasonable in their response. But I do absolutely think that a coleridge applies here. But I think it's also important that we look at the facts. We have two separate incident reporting times. We have a report in the spring, in May, and we have a report that gets filed in November. Ms. Wehmer files a complaint on the same day that Mr. O'Korn files a complaint. It is essentially the same complaint. The information he provides is the information told to him by the plaintiff. The information that she provides is her account of the experience in the room. There are no witnesses identified. There are no requests for interim measures to assist her as the process goes along. In response to these two complaints, which are very brief and they are included in the record, as Justice Boggs pointed out, as part of Exhibit 1, in response to that, the institution opened a complaint, opened an investigation, reached out to Ms. Wehmer. Are there any documents from May, that is, as I read it, and I may have missed stuff, is that most of the citations are from the November report where people say certain things about what happened in May. Is that fair? That's right, Your Honor. That is what's included in the record because the record is confined to what plaintiffs submitted with her complaint. As part of the further investigation that went on in the fall, those initial complaints were not included. You're saying that's because at the motion to dismiss stage, you don't get to say anything yourself about why your actions were not clearly unreasonable. That's correct, but I don't think that we need to. I think based on the totality of the circumstances as presented by the plaintiff herself and the exhibits that she chose to submit, we don't have a clearly unreasonable reaction here, response by the institution. The institution did open a complaint. Could you explain what you mean by the totality of the circumstances doesn't mean that the institution acted unreasonably? So we have to look at the facts as known to the institution at the time. Those are the facts that were alleged in the student's complaint. And we also have to look at the fact that there are no witnesses who could corroborate this information. And the only person who can really opine on what happened in that room is Ms. Wehmer herself. We know from the record that... Or Professor Traeger. Yes, absolutely. Is there any indication that they contacted Traeger? Not in the pleadings as submitted by the plaintiff, Your Honor. But we do know from the pleadings submitted by the plaintiff that the institution attempted to contact her several times. And that's expressed in Exhibit 1 at page 34. Was this before or after the conversation where she said she wouldn't feel comfortable coming into campus to meet? Well, there were several attempts. So I have to assume... I don't know, Your Honor, frankly. I don't know whether the first conversation said, I'm not interested in communicating with you on purpose, or the last communication. We just know that there were several efforts noted by the investigator of the fall investigation that there were efforts to contact her. And the case did remain open for three weeks' time. She was also notified that the case was being closed. There's no indication in the complaint by Ms. Wehmer that she then said, Wait, I want you to investigate this. There's no effort made by her at that time to say, I need help. I need an interim measure here. Well, she wasn't told that... she had the option of requesting that it remain open or request further investigation. You would concede that. I would concede that's not in the record. So I don't know what she was told. That's right, Your Honor. But she was told that it was closed. She did not reach out. So we have a period of time from the end of May until the end of October where absolutely nothing happens according to the record that we have to look at. There's no indication that Mr. Tiger sexually harassed her further. And in fact, the meeting that took place with Dolores O'Drummond, we know, was set up by Mr. O'Korn. It wasn't set up at the insistence of Ms. Wehmer. Mr. O'Korn reaches out to Ms. Wehmer and says, I want you to come in and speak with this other faculty member, Dolores O'Drummond. And she did. She sat down with Ms. Drummond and had a conversation with her. And as a result of that, Ms. Drummond filed a further complaint. In that complaint, there was more detail. Not more detail about the May 2nd incident, but there were students. There were identified witnesses. There were students who also complained about inappropriate sexual comments that they heard. One was a current student. One was a graduated student. I don't understand why the UT office that's in charge of this couldn't have done the same thing. I think without a lead, I mean, with all due respect, Your Honor, where would you start? Would you call in every student who had taken a class with him to investigate with them what their experience was in the classroom? Well, why not say, well, then... There were no prior complaints. Why not say to her, when she said she doesn't want to come on campus, why not say, well, do you want to meet in the Starbucks? Do you want me to come to your place? I don't know. I don't know what the content of the conversation was between the investigators. Then why is this a dismissal on the pleadings? Because I think what we do know is enough to dismiss on the pleadings. There is nothing to be gleaned from moving forward. I mean, one of the reasons we don't dismiss on the pleadings is for further discovery, right? So we can get further information. In this instance, I don't think further information will get us anywhere. Even if we accept that the institution opened the complaint, contacted plaintiffs several times, she refused to participate, they then closed the case. What do you mean by refused to participate? Does her complaint say, and I refuse to participate? Her complaint does not say that. But the record does support finding in Exhibit 1 in the investigative information that she said that she wasn't interested in participating, that she felt it was her right not to participate. And it certainly is. It is her right. Because there is a balancing between trying to right the wrongs of sexual discrimination and also trying to honor victims of discrimination. What you say about that was material that she also submitted. So even though the complaint doesn't say that, the material that she submitted as attachments does. Absolutely. Absolutely. So are you relying entirely on that as opposed to the question of whether Davis and Gebser, or especially Gebser, has the same inference that Kolarich makes explicit, that there has to be some damage as a result of further harassment? It seems to me you have two potential arguments. One is that all this stuff about two different standards, you know, most of the cases go toward the standards are the same. It's true Kolarich doesn't make that explicit. But, you know, Gebser says you have to have notice and damage. Or are you mainly relying on the fact that you must have been reasonable because she wouldn't cooperate? We're relying on both, Your Honor. I mean, I think there is an argument to be made here that the facts standing alone do not support clearly unreasonable standard. But I also do think Kolarich applies here. The court in Kolarich. Kolarich doesn't clearly apply itself because they were pretty clear that it just happened their case was about student on student. But I do believe that the standard articulated in Kolarich should be applied here as well. Because in the past, through Davis, through Gebser, through other court holdings, we have said multiple times that the standard for deliberate indifference is the same, whether it's peer-generated or faculty-generated harassment. That's a different issue, though. Pardon? That's a different issue. Yeah, you need deliberate indifference for both. It's a separate question whether when it's a teacher you need an actual second post-report incident. As articulated in Kolarich, Your Honor? I guess I don't see that articulation in Kolarich. To me, I think that that standard can be extrapolated to faculty-generated complaints. So in this instance, there was absolutely, without question, no further sexual harassment of any sort. There was no contact between the parties. And it is true that the student removed herself, as she alleges. I mean, true if we accept the complaint on its face. But she removed herself from the university setting as a result of the sexual harassment that she suffered the first time. But I don't believe that Title IX holds us to account for that. Title IX is a narrow statute. And it's certainly not a plaintiff's only avenue for recovery by a failure of an institution to take appropriate action. But in this instance, it is a narrow standard and a high bar for plaintiffs to meet. Because we're trying to hold the institution accountable to eliminating discrimination that's in existence. We can't hold an institution accountable to eradicating all forms of potential discrimination. And here, we're holding them to whatever an individual plaintiff's vulnerability is. I mean, that's a wide, wide space to fill. Can you see why a student who has been harassed by a professor and then complains about it, and then is told that nothing's going to happen, would not want to put herself in the position of being attacked a second time? Yes, Your Honor, I can, absolutely. And I can also understand why an institution, when confronted by a student that says, I don't, a student who herself, when filed a complaint, did so anonymously, and then says, I don't want to come in for an interview. Why the institution, Are you saying her complaint was anonymous? Hers, the one she filed on her own behalf, was anonymous. She did not submit her name. Mr. O'Korn submitted his at the same time, identifying her. So that's, I mean, the institution clearly knew who had filed the complaint, because we have nearly, you know, very similar complaints. But my point is that we have a student who doesn't want to participate in the process. We have a student who has filed anonymously. I can see how an institution would be reticent to want to bring that plaintiff out into the light. Just to be clear, when they contacted her in effect formally, it wasn't as a result of her complaint, because it was anonymous. They must have contacted her as a result of O'Korn's complaint. Right. When you say she doesn't, didn't want to participate in the process, is that based on her expressing that she didn't want to come in for an interview, and of course she filed an anonymous complaint? Is that the only thing that led the institution to conclude that, or are there other things that she did that indicated she did not wish to participate? To my knowledge, Your Honor, it was her, at Exhibit 1, page 34, we have the comment by the investigator who says that they reached out to her multiple times to try to engage her in the process, and she ignored some of those requests. She simply did not respond when they reached out to her. And this exhibit is the report from the later investigation? It is. The one we have before us is the report of the later investigation. The investigator asks her about the first investigation, and in response to her response, the investigator then goes back and looks at the investigation and reports at Exhibit 1, page 34, that they had reached out to her. And on that page 34 is where, I don't know if it's a footnote, it's below the line, it says that the student, or the blank, reports that O'Korn filed. So she was asked if she was comfortable coming in for an interview and said no because she thought that was blank right. Her right. That it was her right, simply not query, not to come in or not to be interviewed. Yes. The words about multiple efforts to contact her, where are those words? I believe those are in the body of page 34. Above the line? Of the investigators. I don't see that. She says that she looks at the, I hope I didn't write down the wrong page. She says that she looked at the investigative report. She, the investigator? The investigator. Okay, I can try to find it. Yes. I'm using your time. Go ahead. Well, my time is well over, Your Honor. Thank you very much. Thank you very much. We'll have rebuttal. Thank you. Okay, it's below the line. I found it. Sorry. I would like to emphasize that I think it's very telling that Ms. Hayes is up here talking about Ms. Waymer's credibility and the credibility of her accusations and her testimony, which goes to the weight of the evidence, not the sufficiency of the allegations, which is what matters on a 12B6 standard. Not only is Ms. Waymer's credibility an issue for the jury to decide, we believe that other allegations in the complaint, if proven, would also support her credibility, including that two professors were so eager to assist her with her complaint. And the investigation itself, which resulted in the professor's termination, based on a finding that he did, in fact, subject plaintiff. What do you do about the part where she was contacted several times? We don't believe she was contacted several times. And we would ask, where are the documents? Where is the official documentation that this was appropriately handled, that they communicated with her appropriately, that they notified her of the consequences of not participating? Your argument, which I thought they agreed with, was that on a motion to dismiss, they can't put that in. So that you submitted the part where it says Ms. Nolte reviewed the original Title IX report that explained it and said the Title IX office made several attempts to contact her but closed the case due to non-response. Is basically your position that even though that's in the report that you submitted, that can be discounted as well because you didn't plead, you didn't agree with that in your complaint? Yes, Ms. Wehmer takes issue with that. Ms. Wehmer takes issue with that. She is clearly alleging that they communicated in almost a sneaky manner with her to say, are you comfortable? Are you comfortable coming in for an interview? No. The next thing she heard from them was case closed. That's her allegation. So that then she disputes that there were several attempts. Yes, Your Honor. That is in sharp dispute. I'm sorry? That is in sharp dispute. Okay. Does the complaint, and I thought in the complaint, in effect, she doesn't explicitly say the contrary. She just doesn't agree with it. She does not say, in fact, does she even say there was one contact? Your Honor, I believe that is in the complaint where we say she had the one conversation where it was asked, are you comfortable? And then the next conversation she had was. Let me ask you one question on the other arm here, which is the teacher-student Gebser. You quote Gebser a good bit because it's a teacher-on-student case. Yes, Your Honor. On the other hand, the key in Gebser ends up saying, we will not hold a school district liable for teacher-on-student harassment absent actual notice and deliberate indifference. And is it, what's meant by actual notice there? Is it actual notice of the damage that results? They clearly, I mean, in these cases, you never have actual notice of the first incident. Okay? So once you've had the first incident, your position is the university doesn't have to know anything else. It doesn't have to know either actual second damage or the kind of subjective states she took. What does actual notice there mean? Only the first incident? Actual notice simply means actual notice of the plaintiff's complaint, that this professor sexually harassed me. And in a teacher-on-student case. So you're saying that actual notice of the complaint doesn't make them liable for what happened before the complaint? Correct, Your Honor. Okay. So the question then is, do we read Gebser to mean no further actual notice is needed of anything, either an act or of her subjective actions? Actual notice of an accusation of a teacher-on-student harassment incident requires the university to reasonably investigate the complaint and act reasonably in response to it. So all the notice that's required is receipt of the plaintiff's complaint that she was harassed by a university professor. They have that notice. I don't believe that's in dispute here. And we also agree that we understand what the precedent is that says, and the Paint Valley case talks about this, there is one standard for Title IX cases in a way, both types, teacher-on-student and student-on-student, that is deliberate indifference. We don't argue with that. We believe that issue gets confused because the second step is what constitutes deliberate indifference is different.  is different in the two types of cases. And again, as we briefed amply, in these teacher-on-student cases, teacher-on-student harassment is of such a nature, and given the university's control, given the power dynamics at issue, you need only show that the student remains left vulnerable to further harassment. In closing, I would just like to point out briefly that Title IX is a remedial statute. The end result, if the district court's error is not corrected by this court, would be to invert Title IX standards both by excusing a university's unreasonable communications about a legitimate Title IX complaint and also putting the burden on a traumatized victim of sexual harassment to divine the truth from those unreasonable communications. We believe that on this court's de novo review it should be easy... Counselor, you're going to have to wrap up. Thank you. It should be easy to reverse the district court's order. Thank you. Thank you. Well, thank you very much for your arguments, and the case is submitted. Certainly call the next...